UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRIZ QUINTERO DE VAZQUEZ, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act,<br><br>Plaintiff,<br><br>v.<br><br>TOMMY BAHAMA R&R HOLDINGS, INC., a Delaware corporation; TOMMY BAHAMA GROUP, INC., a Delaware corporation; TOMMY BAHAMA BEVERAGES, LLC, a Delaware limited liability company; OXFORD INDUSTRIES, INC., doing business in California as GEORGIA OXFORD INDUSTRIES, INC., a Georgia corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3:22-cv-01881-JES-KSC<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW; ORDER GRANTING MOTION TO COMPEL ARBITRATION; ORDER DENYING MOTION TO DISMISS; AND ORDER STAYING PROCEEDINGS PENDING ARBITRATION**<br><br>**[ECF No. 6]** |

## I. INTRODUCTION

Plaintiff Beatriz Quintero de Vazquez ("Plaintiff"), on behalf of herself and a putative class of similarly situated employees, sued Tommy Bahama R&R Holdings, Inc., Tommy Bahama Group, Inc., Tommy Bahama Beverages, LLC, and Oxford Industries, Inc., doing business in California as Georgia Oxford Industries, Inc. ("Defendants") on October 13, 2022, in California state court for eleven wage and labor claims under the California Labor Code, Private Attorneys General Act ("PAGA"), and the California Business and Professions Code. ECF No. 1, Exhibit A. On November 29, 2022, Defendants removed this action to this Court under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1441(b), and 1446. ECF No. 1. This order resolves Defendants' Motions to Compel arbitration of Plaintiff's individual PAGA claims and Dismiss non-individual claims. ECF No. 6.

Because there was a genuine dispute as to whether a valid mandatory arbitration agreement existed, the Court deferred ruling on Defendants' Motions to Compel Arbitration and Dismiss pending an evidentiary hearing pursuant to 9 U.S.C. § 4.[1] Plaintiff did not demand and thus waived her right to a limited jury trial, and as a result

---

[1] If the opposing party does not request a jury trial, the Court must conduct a bench trial or an evidentiary hearing. *See, e.g.*, *Aguirre-Valdivia v. Mastercorp, Inc.*, No. 3:19-cv-2424-CAB-(WVG), 2020 U.S. Dist. LEXIS 250896, at *9 (S.D. Cal. Mar. 20, 2020) (ordering a bench trial on whether a valid arbitration agreement exists because no jury trial was demanded); *Garbacz v. A.T. Kearny, Inc.*, No. C 05-05404 JSW, 2006 U.S. Dist. LEXIS 20135, at *7-8 (N.D. Cal. Apr. 3, 2006) (noting that as neither party requested a jury, "the Court may hold a bench trial or evidentiary hearing to resolve whether an agreement to arbitrate exists"); *Andreoli v. Youngevity Int'l Inc.*, No. 3:16-cv-02922-BTM-JLB, 2019 U.S. Dist. LEXIS 160948, at *13 (S.D. Cal. Sep. 18, 2019) (noting that whether there will be a jury or a bench trial depends on whether the plaintiff demands a jury trial); *Castillo v. Lowe's HIW, Inc.*, No. C13-4590 TEH, 2013 U.S. Dist. LEXIS 195728, at *11 (N.D. Cal. Dec. 2, 2013) (finding that the plaintiff waived right to a jury trial and therefore is "entitled to a bench trial or evidence hearing on the limited issue of whether he signed the Arbitration Agreement and thereby formed an agreement to arbitrate."); *Fields v. Wise Media LLC*, No. C 12-05160 WHA, 2013 U.S. Dist. LEXIS 202252, at *14-15 (N.D. Cal. Jan. 25, 2013) (finding that the plaintiff failed to timely demand a limited jury trial and therefore"[i]n this circumstance, it has been the practice in this district to proceed to an evidentiary hearing or bench trial.").

the Court held an evidentiary hearing on September 5, 2023. After weighing and evaluating the evidentiary record in the same respect that it would instruct a jury to do and fully considering the legal arguments of counsel, the Court issues the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a). To the extent any findings of fact constitute conclusions of law, or any conclusions of law constitute findings of fact, they are adopted as such.

## II.   FINDINGS OF FACT

1. On September 9, 1974, Plaintiff was born in Sinaloa, Mexico.
2. Plaintiff is fluent in Spanish and knows a few common words and phrases in English.
3. From January 2018 to May 2022, Defendants employed Plaintiff as a prep cook.
4. Plaintiff's job duties were preparing food, washing dishes, and cleaning and maintaining the kitchen.
5. Prior to Plaintiff's starting date, she was interviewed in Spanish by Tommy Bahama R&R Holdings, Inc.'s ("Tommy Bahama") Executive Chef, Hector Ramirez ("Ramirez").
6. During Plaintiff's tenure at Tommy Bahama, Plaintiff and Ramirez exclusively communicated in Spanish.
7. In January 2018, Ramirez conducted a one-on-one onboarding meeting with Plaintiff in Spanish.
8. In this meeting, Ramirez provided Plaintiff with a packet of onboarding documents in English.
9. One of these documents was an English-language Arbitration Agreement, which Plaintiff could not read.
10. A Spanish version of the Arbitration Agreement was readily available, but Ramirez did not inform Plaintiff, nor did Plaintiff ask for the Spanish version.

11. Ramirez explained to Plaintiff a brief description of the Arbitration Agreement in Spanish. Without translating word for word, Ramirez told Plaintiff that the Arbitration Agreement means she agrees to settle disputes through an arbitrator. Ramirez did not explain to Plaintiff that the Arbitration Agreement states that she would be waiving her right to a jury trial and to form a class action or representative action.

12. At the onboarding meeting, Plaintiff did not ask questions about the Arbitration Agreement.

13. Plaintiff signed the Arbitration Agreement.

14. Section B of the Arbitration Agreement states, "[t]his Agreement is governed by the Federal Arbitration Act, to the maximum extent permitted by applicable federal and state laws."

15. Section C of the Arbitration Agreement provides that:

> The parties agree all claims must be pursued in arbitration on an individual basis only. By signing this Agreement, You and the Company waive your right to commence, or be a party to, or a member of, any class, collective, representative or group action or claims, or to bring jointly any claim with any other person or entity. This waiver also includes claims in which You seek to act as a private attorney general on behalf of the general public or any group of individuals. The arbitrator selected by the parties to decide a dispute shall have no power under this Agreement to consolidate claims and/or to hear a collective or class action and/or to hear a representative or group claim and/or hear a private attorney general claim. The Company and You waive the right to a court or jury trial with respect to all covered claims as defined in this Agreement. Nothing herein limits your right and the rights of others to engage in protected concerted activity under the National Labor Relations Act.

16. Section D of the Arbitration Agreement contains the following language:

> If the prohibition against class/collective actions is deemed unlawful, then such action shall no longer be subject to arbitration but shall proceed forward in court as a collective, class or representative action . . . This Agreement shall be self-amending; meaning if by law or common law a

provision is deemed unlawful or unenforceable, that provision and the Agreement automatically, immediately and retroactively shall be amended, modified, and/or altered to be enforceable.

17. On two separate occasions during Plaintiff's tenure, she trained two English-speaking employees by showing them the recipes, where items were located, and directing them to read the recipes.

18. Ramirez on one occasion, overheard Plaintiff say to the sous-chef in English common work-related terms, "no more coconut shrimp on my breakfast."

### III.  CONCLUSIONS OF LAW

The Federal Arbitration Agreement ("FAA") governs the Arbitration Agreement. The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Once a party moves to compel arbitration under the FAA, a district court must confront (1) whether a valid agreement to arbitrate exists and (2) whether the agreement encompasses the dispute at issue. *See AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 651, 106 S. Ct. 1415, 1419 (1986); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013).

While the FAA manifests a "liberal federal policy favoring arbitration agreements," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S. Ct. 1647, 1651 (1991), "agreeing to arbitrate 'is a matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit,'" *Boatman v. Houzz Inc.*, No. 22-cv-00738-JSW, 2022 U.S. Dist. LEXIS 65108, at *6 (N.D. Cal. Apr. 7, 2022). When an arbitration agreement falls within the FAA's purview, it is subject to federal substantive law for questions of contract interpretation and state law for questions concerning whether the parties agreed to arbitrate. *See, e.g.*, *Klink v. ABC Phones of N.C., Inc.*, No. 20-cv-06276-EMC, 2021 U.S. Dist. LEXIS 158042, at *6-7 (N.D. Cal. Aug. 20, 2021) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995)). In analyzing whether an arbitration agreement is

1  valid, "generally applicable [state] contract defenses, such as fraud . . . may be applied to
2  invalidate arbitration agreements without contravening [9 U.S.C. § 2]." *Doctor's Assocs.*
3  *v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656 (1996).

4       Under California law, defendants bear the burden of "proving the existence of an
5  arbitration agreement by a preponderance of the evidence, and the party opposing
6  arbitration bears the burden of proving by a preponderance of the evidence any defense . .
7  . ." *Serafin v. Balco Props. Ltd., LLC*, 185 Cal. Rptr. 3d 151, 156 (2015).

8      **A. Whether Parties Agreed to Arbitrate**

9          **1. Valid Agreement to Arbitrate**

10      Defendants support their request to compel arbitration by attaching to their moving
11 papers an Arbitration Agreement signed by Plaintiff. ECF No. 6-1. "To satisfy the
12 moving party's initial burden, the petition or motion must be 'accompanied by prima
13 facie evidence of a written agreement to arbitrate the controversy' in question." *See, e.g.*,
14 *Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 705, 111
15 Cal. Rptr. 3d 876, 886 (2010) (quoting *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th
16 394, 413, 58 Cal. Rptr. 2d 875, 885, 926 P.2d 1061, 1072 (1996)). "For this step, 'it is not
17 necessary to follow the normal procedures of document authentication.'" *Kinder v.*
18 *Capistrano Beach Care Ctr.*, LLC, 91 Cal. App. 5th 804, 814-15, 308 Cal. Rptr. 3d 631
19 (2023). The record, including the parties' testimony at the evidentiary hearing,
20 demonstrates that neither party disputes that Plaintiff signed the Arbitration Agreement or
21 its authentication. ECF Nos. 10 at 3, 11 at 5, 35 at 38. Thus, the Court finds that
22 Defendants presented prima facie evidence of an agreement to arbitrate.

23         **2. Fraud in the Execution**

24      Plaintiff challenges the formation of the Arbitration Agreement contending that it
25 is void because of fraud in the execution. In urging this view, Plaintiff states that during
26 her one-on-one onboarding meeting, Ramirez made misrepresentations about the
27 onboarding employment documents by never mentioning anything about an Arbitration
28

1  Agreement, and instead saying the documents concerned standard company policies and
2  her job duties. Plaintiff therefore argues that she was misled and induced into signing the
3  Arbitration Agreement because she is a Spanish-speaker and only knows a few common
4  English words and phrases, she always communicated with Ramirez in Spanish, she
5  could not read the English-written Arbitration Agreement, and she was not given a
6  Spanish version. ECF No. 10 at 3, 14. Defendants maintain that the Arbitration
7  Agreement is valid because Plaintiff had a reasonable opportunity to learn its terms. ECF
8  No. 11 at 6-8.

9        A party opposing an arbitration agreement may raise the defense of fraud in the
10 execution. Such defense is a challenge to the formation of a contract and occurs when
11 "the promisor is deceived as to the nature of his act, and actually does not know what he
12 is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and
13 [the contract] is void." *Rosenthal*, 14 Cal. 4th at 415. To establish fraud in the execution,
14 the opposing party must show that: "(1) Defendants made misrepresentations as to the
15 nature or character of the writing; (2) Plaintiff reasonably relied on those
16 misrepresentations; and (3) Plaintiff was thereby deprived of a 'reasonable opportunity to
17 know of the character or essential terms of the proposed contract.'" *Garcia v. U.S.*
18 *Bancorp*, No. CV 12-01596 SJO (RZx), 2012 U.S. Dist. LEXIS 195512, at *6 (C.D. Cal.
19 June 25, 2012) (quoting *Rosenthal*, 14 Cal. 4th at 423). In determining whether Plaintiff
20 met her burden by a preponderance of the evidence, the Court "may consider evidence
21 such as affidavits, declarations, documentary evidence, and oral testimony, if desired."
22 *Id.* at *7; *see also Dimas v. Costco Wholesale Corp.*, No. 2:21-cv-02006-TLN-JDP, 2023
23 U.S. Dist. LEXIS 67700, at *5 (E.D. Cal. Apr. 17, 2023) ("[t]he Court weighs the
24 evidence to reach its ultimate determination regarding the existence of a contract and if a
25 defense renders the contract unenforceable.").

26       Pursuant to 9 U.S.C. § 4, the Court held an evidentiary hearing because Plaintiff's
27 and Ramirez' declarations presented a genuine dispute as to the formation of the

28

Arbitration Agreement. Where a factual dispute about contract formation exists, the Court must conduct a bench trial or an evidentiary hearing if Plaintiff does not demand a limited jury trial. *See, e.g.*, *Castillo*, 2013 U.S. Dist. LEXIS 195728, at *11; *Youlin Wang v. Kahn*, No. 20-CV-08033-LHK, 2022 U.S. Dist. LEXIS 1536, at *33, 35 (N.D. Cal. Jan. 4, 2022).

Against this backdrop, the Court considers whether the Arbitration Agreement is void for fraud in the execution. The first element in the tripartite fraud in the execution test presents a question of credibility. To that end, Plaintiff testified that Ramirez never told her that the onboarding employment documents included an Arbitration Agreement, that she could opt out, or that she was waiving her right to a jury trial and her right to form a class action. *See generally* ECF No. 35. While cross examined, Ramirez countered, testifying he specifically remembers informing Plaintiff about the Arbitration Agreement and explaining that by signing it she agrees to settle disputes through an arbitrator. *Id*. at 25. Ramirez admitted that he did not tell Plaintiff she could opt out or that she would be waiving her rights to a jury trial or to be a part of a class action. *Id*. However, in Plaintiff's opposing papers and at the evidentiary hearing, she failed to cite any authority suggesting misrepresentation exists when a representative omits opt out and jury trial and class action waiver information while explaining the existence and meaning of an arbitration agreement.

The Court finds it credible that Ramirez did, at minimum, tell Plaintiff that there was an Arbitration Agreement that entails resolving disputes through an arbitrator. Indeed, a substantial part of Ramirez' testimony was corroborated by Plaintiff's testimony. Namely, that Ramirez did not tell Plaintiff about her option to opt out of the Arbitration Agreement and that she would be waiving her rights to a jury trial and to form a class action, that during Plaintiff's employment she once said "no more coconut shrimp on my breakfast" in English, and she trained two English-speaking employees.

While the Court disagrees with Defendants that Plaintiff's use of common English

terms and her training English-speaking employees by physically showing them how she prepares food proves she can speak English, the Court believes these instances of Ramirez' testimony being corroborated by Plaintiff evidences the veracity of his testimony. In any event, even if Ramirez only said the documents, including the Arbitration Agreement, were about standard company policies and her job duties, that would likely not constitute misrepresentation. *Rosenthal*, 14 Cal. 4th at 423-24, 426 (finding certain plaintiffs' declarations did not show "any affirmative misrepresentations regarding the existence or meaning of an arbitration clause" where they alleged that defendant's representative told them that client agreements containing an arbitration clause were "unimportant[] or that plaintiffs need not read them."); *Lopez v. Sanchez*, 2019 Cal. Super. LEXIS 81923, *10 (holding that plaintiff's claims that her employer told her a stack of employment documents were about her job duties without mentioning the inclusion of an arbitration agreement did not demonstrate misrepresentation). Thus, Plaintiff failed to prove that her assent was procured through misrepresentation.

The Court need not address the remaining two fraud in the execution elements. Nevertheless, the Court will briefly entertain both elements. First, the Court is convinced Plaintiff reasonably relied on Ramirez' statements. Both Plaintiff and Defendants' executive chef, Ramirez, testified that Plaintiff exclusively spoke to Ramirez in Spanish since they first met at Plaintiff's interview. Because Ramirez knew, at least constructively, that Plaintiff did not understand English well, Ramirez affirmatively described all the onboarding documents including the Arbitration Agreement in Spanish. Thus, any reliance on Ramirez' statements was reasonable. However, because the Court is persuaded that Ramirez mentioned the Arbitration Agreement and briefly explained its significance such that Plaintiff knew she was agreeing to settle disputes through arbitration, his statements were not misrepresentations. Second, Plaintiff made no showing that she was deprived of a reasonable opportunity to learn the agreement's terms. Once Ramirez informed her of the Arbitration Agreement and its significance,

1  Plaintiff could have asked questions. Plaintiff did not allege nor testify that she did not
2  have a reasonable opportunity to learn about the terms of the agreement, therefore
3  Plaintiff failed to prove this element by a preponderance of the evidence. As a result,
4  Plaintiff failed to meet her burden of establishing fraud in the execution.

### 3. Severability

Plaintiff also argues that the Arbitration Agreement contains a wholesale waiver of PAGA claims, such waivers are unenforceable, and the severability language does not save enforceable portions – e.g., agreeing to arbitrate individual claims – instead it directs the entire action to proceed in court. ECF No. 10 at 21. Relying on the Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022), Plaintiff avers that the Arbitration Agreement has a similar wholesale waiver the court held invalid. Defendants' position, on the other hand, is that the Arbitration Agreement does not contain a wholesale waiver because the parties did not waive the right to bring individual claims, rather they only waived the right to pursue non-individual claims and specifically agreed to arbitrate individual claims. ECF No. 11 at 5, 9. Defendants contend that even if this Court interprets the Arbitration Agreement to include a wholesale waiver, the severability clause renders the agreement enforceable. ECF No. 11 at 5, 10-11. The Court agrees.

Plaintiff's reliance on *Viking River* is misplaced. In *Viking River*, the Supreme Court elucidated that the word "representative" in PAGA actions is used in two distinct ways. 142 S. Ct. at 1916. First, a PAGA claim can be said to always be representative, even if it exclusively concerns violations personally suffered by a PAGA plaintiff and not a group because a PAGA plaintiff acts as a proxy or agent of the State and not in his or her own individual capacity. *Id*. Second, PAGA claims can also be representative in the sense that the alleged violations may arise out of events involving other employees. *Id*. In spelling out this distinction, the Supreme Court affirmed the California Supreme Court's principal holding in *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348 (2014)

prohibiting wholesale waivers. *Id*. at 1924-25.

*Viking River* is distinguishable because no wholesale waiver exists here. Illustratively, Section C of the Arbitration Agreement entitled "Class Colle[c]tive Action Waiver, Jury Waiver and Administrative Charges," state that: "The parties agree all claims must be pursued in arbitration on an individual basis only. By signing this Agreement, You and the Company waive your right to commence, or be a party to, or a member of, any class, collective, representative or group action or claims, or to bring jointly any claim with any other person or entity. This waiver also includes claims in which You seek to act as a private attorney general on behalf of the general public or any group of individuals." ECF No. 6-1 at 8-9.

This waiver provision conveys no wholesale enforcement as the parties did not agree to waive both individual and non-individual claims. In the first sentence, the parties expressly agree to arbitrate all claims individually. Accordingly, the Arbitration Agreement cannot be construed to include a contractual waiver of individual claims. What the parties do agree to waive are "representative" claims. This waiver refers to the second meaning of "representative" articulated by *Viking River* because it is grouped with the waiver to pursue class and group actions. The following sentence also explicitly uses "representative" in the context of PAGA actions on behalf of a group, thereby indicating that "representative" alludes to non-individual PAGA claims.

Had the Arbitration Agreement included a wholesale waiver, the severability clause would apply, and Defendants would still be entitled to arbitrate Plaintiff's individual claims. Plaintiff elides the full context of the severability clause to make the argument that it lacks the language required to sever unenforceable terms while leaving the remaining terms intact. ECF No. 10 at 20-22. This is not so. Here, the relevant severability language in Section D, which immediately follows the waiver provision, states: "If the prohibition against class/collective actions is deemed unlawful, then such action shall no longer be subject to arbitration but shall proceed forward in court as a

collective, class or representative action . . . . This Agreement shall be self-amending; meaning if by law or common law a provision is deemed unlawful or unenforceable, that provision and the Arbitration Agreement automatically, immediately and retroactively shall be amended, modified, and/or altered to be enforceable." In *Viking River*, the Supreme Court held, if the contractual waiver was construed as a wholesale waiver, the severability clause, which provided that "if the waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must still be 'enforced in arbitration,'" mandated arbitration of the individual PAGA claim. 142 S. Ct. at 1924-25.

The same holds true here. Because the Arbitration Agreement mandates class and collective actions – which also refer to PAGA non-individual actions based on the agreement's use of the second meaning of "representative" – to proceed in court if the waiver is unlawful and because it is self-amending to be enforceable, the agreement sufficiently articulates severability language like *Viking River* to forgo unenforceable terms and leave valid terms in effect.

### B.  Motion to Compel Individual PAGA Claims

Because an agreement to arbitrate was formed, the Court now confronts whether the parties' employment disputes fall within its scope and whether Defendants are entitled to enforce the agreement. The answer is yes to both.

The FAA authorizes a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. "Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration." *See e.g.*, *Seybert v. Chln, Inc.*, No. 3:20-cv-02529-H-KSC, 2021 U.S. Dist. LEXIS 46947, at *7 (S.D. Cal. Mar. 11, 2021).

When a moving party establishes the existence of a valid arbitration agreement, he then bears the burden of proving the agreement encompasses the disputed issue. *See*

*AT&T Techs.*, 475 U.S. at 651. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Portland GE v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). Once a court determines that a claim is covered by a written and enforceable agreement to arbitrate, it has little discretion to deny a motion to compel arbitration. *See, e.g.*, *Llevat v. True N. Brands, LLC*, No. 21-cv-656-BAS-AGS, 2021 U.S. Dist. LEXIS 225308, at *8 (S.D. Cal. Nov. 22, 2021) (quoting *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991)).

Given that Defendants demonstrated a prima facie showing that Plaintiff entered into a valid agreement to arbitrate her individual PAGA and wage and hour claims, Plaintiff failed to meet its burden of proving fraud in the execution and thus failed to defeat the validity of the agreement, and neither party disputes that Plaintiff's claims fall within the agreement's scope, the Arbitration Agreement is enforceable and the Court must compel arbitration. *See, e.g.*, *Armenta v. Staffworks, LLC*, No. 17-cv-00011-BAS-NLS, 2017 U.S. Dist. LEXIS 114266, at *4 (S.D. Cal. July 21, 2017) ("[i]f a party seeking arbitration establishes [the validity of an arbitration agreement and that disputed issues are arbitrable], the court must compel arbitration.").

Accordingly, the Court **GRANTS** Defendants' motion to compel individual claims to arbitration.

### C. Motion to Dismiss Non-individual PAGA Claims

Defendants move to dismiss Plaintiff's non-individual PAGA claims invoking *Viking River*'s holding that a plaintiff lacks statutory standing to bring non-individual PAGA claims in court when she is compelled to arbitrate her individual PAGA claims. ECF No. 11 at 12. In lieu of dismissal, Defendants request a stay of Plaintiff's non-individual PAGA claims pending arbitration of Plaintiff's individual claims. ECF No. 6 at 20.

Although the Supreme Court in *Viking River* opined that a PAGA plaintiff loses standing to maintain non-individual claims when their individual claims are arbitrated,

*Viking River* is not binding here because the California Supreme Court remains the final arbiter of California law. *See Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886 (1975) ("state courts are the ultimate expositors of state law"); *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236, 61 S. Ct. 179, 183 (1940) ("the highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). Following the decision in *Viking River*, the California Supreme Court granted review in *Adolph v. Uber Techs., Inc.* "to provide guidance on statutory standing under PAGA," holding that "[w]here a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." 14 Cal. 5th 1104, 1114, 1116 (2023). The *Adolph* court clarified that "[t]o have PAGA standing, a plaintiff must be an aggrieved employee—that is, (1) someone who was employed by the alleged violator and (2) against whom one or more of the alleged violations was committed." *Id.* at 1114 (internal citations omitted).

Here, Plaintiff was employed by Defendants and alleged to have sustained at least one labor code violation committed against her. Plaintiff's standing is not nullified by arbitrating her individual claims because it is the "fact of the violation itself" that is necessary to confer standing. *Id.* at 1120-21. Moreover, despite the Defendants' argument to the contrary, "it is plaintiff's status as an aggrieved employee, not the redressability of any injury the plaintiff may have suffered, that determines the availability of PAGA standing." *Id.* at 1126.

As such, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's non-individual PAGA and class claims and **STAYS** this action pending arbitration of individual claims. *See* 9 U.S.C. § 3; *Adolph*, 14 Cal. 5th at 1125 (citing Cal. Civ. Proc. Code § 1281.4).

### IV.     CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion to Compel arbitration of Plaintiff's individual PAGA claims, **DENIES** Defendants' Motion to Dismiss Plaintiff's non-individual PAGA and class claims, and **STAYS** this action pending the completion of individual arbitration. The Court also **DIRECTS** the parties to file a joint report by **February 27, 2024,** advising the Court of the status of the arbitral proceeding.

**IT IS SO ORDERED.**

**Dated: November 29, 2023**

Honorable James E. Simmons Jr.
United States District Judge